UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-12810-RGS

DAVID GARFIELD

v.

GORILLA, INC. and WAL-MART STORES, INC.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

July 1, 2015

STEARNS, D.J.

Plaintiff David Garfield brought this diversity action against a tree stand manufacturer, Gorilla, Inc., and its seller, Wal-Mart Stores, Inc., (Wal-Mart). Against Wal-Mart, Garfield asserts various breach of warranty claims: (1) failure to warn (Count VI); (2) breach of the implied warranty of merchantability (Count IV); and (3) breach of the warranty of fitness for a particular purpose (Count V).[1] Wal-Mart now moves for summary judgment on all three Counts.

---

[1] Garfield asserts the same claims against Gorilla in Counts I, II, and III. Gorilla has not moved for summary judgment.

1

## BACKGROUND

In the light most favorable to Garfield as the nonmoving party, the material facts are as follows. David Grove, a friend of Garfield, purchased the Gorilla deer hunting tree stand from a Wal-Mart store in Massachusetts.[2] Pl.'s Opp'n Mem. at 2. The tree stand included a platform, cables, and a full body harness.[3] Def.'s Mem. at 3-4. The tree stand also came with written and video safety instructions. Def.'s Exs. 3, 4. The written instructions explicitly stated in capital letters that a user "must wear a lineman's style body safety harness . . . [and] always remain harnessed to the tree from the moment you leave the ground until you return to the ground." Def.'s Ex. 3. These warnings were repeated multiple times on the written instructions as well as on the two instructional videos. *Id.*; Lorne Smith Aff. ¶¶ 7-9. One video specifically stated that "[u]sing your fall arrest device from the moment you leave the ground until the moment you return to the ground is the single most important action you can take to prevent a treestand accident that could result in injury or death." *Id.* ¶8. The written instructions also warned

---

[2] A tree stand is an elevated stand used by deer hunters to conceal themselves above ground level. Pl.'s Opp'n Mem. at 2.

[3] The six-year-old Gorilla tree stand was manufactured in 2004. Def.'s Mem. at 6.

the user to inspect the tree stand before use, to never use it if damage was observed, and to never keep the stand installed in a tree for more than two consecutive weeks. Def.'s Ex. 3. Gorilla also warned users to replace the cables every three years. Def.'s Ex. 5. Garfield was familiar with and understood these instructions. Pl.'s Ex. C at 107.

On September 22, 2010, while hunting deer, Garfield used a ladder to install the stand in a tree. Pl.'s Opp'n Mem. at 2. When he stepped from the ladder onto the stand, the cables suspending the platform of the stand broke. Pl.'s Opp'n Mem. at 3. The two cables were made of braided metal wire that had been galvanized to resist corrosion. Def.'s Mem. at 3. As he was not wearing a safety harness, Garfield fell approximately twenty feet after the platform gave way. As a result of the fall, he suffered a severe fracture in his left femur. Wilson Dobson, Garfield's proffered expert, has opined that the tree stand was defectively designed because of the susceptibility of the cables to premature corrosion. Pl.'s Ex. A.[4]

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact

---

[4] Dobson is a Professional Engineer and a Mechanical and Materials Engineering Consultant. Pl.'s Opp'n Mem. at 3.

and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). Although all reasonable inferences are drawn in the nonmovant's favor, the court cannot "'draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.'" *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014), quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Consequently, "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Torres v. E.I. Dupont de Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000) (internal quotations and citations omitted).

### ***Breach of Implied Warranty of Merchantability***

A seller breaches its warranty obligations when a product that is defective and "unreasonably dangerous" for the "ordinary purposes" for which it is intended causes injury. *Haglund v. Philip Morris, Inc.*, 446 Mass. 741, 746 (2006). Under Mass. Gen. Laws ch. 106, § 2-314, a plaintiff bears the burden of proving "a defect in the product or an unreasonably dangerous

4

condition which existed at the time the product left the [manufacturer's] control." *Enrich v. Windmere Corp.*, 416 Mass. 83, 89 (1993), citing *Colter v. Barber-Greene Co.*, 403 Mass. 50, 62 (1988). "A product may be unreasonably dangerous because of a defect in design. . . . Alternatively, a product may be considered to be unreasonably dangerous because of the absence of an adequate warning, sufficient to alert those who may be sensitive to the product and to allow users to balance the risk of harm against the product's social utility." *Com. v. Johnson Insulation*, 425 Mass. 650, 661 (1997); *see Haglund*, 446 Mass. at 747 ("Warranty liability may be premised either on the failure to warn . . . or . . . on defective design.").

### *Defective Design*

In evaluating the adequacy of a product's design, the fact-finder is to consider "'the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design.'" *Back v. Wickes Corp.*, 375 Mass. 633, 642 (1978), quoting *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 431 (1978). An "essential element of . . . a design flaw claim is that there be a safer alternative design." *Gillespie v. Sears, Roebuck & Co.*, 386 F.3d 21, 26 (1st Cir. 2004). "[T]here

5

is a case for the jury if the plaintiff can show an available design modification which would reduce the risk without undue cost or interference with the performance of the machinery." *Uloth v. City Tank Corp.*, 376 Mass. 874, 881 (1978).

In this case, Garfield contends that the tree stand cables were defectively designed and unreasonably dangerous because of their susceptibility to weakening from corrosion over time.[5] In his report, Dobson opined that "the primary cause of [the tree stand's] failure was corrosion."[6] Pl.'s Ex. A at 2. He further noted that the cables "consist of an alloy subject to corrosion when exposed to an outdoor environment and weather, and failure can be expected given sufficient time." *Id.* Wal-Mart responds by arguing that, as Dobson conceded in his deposition, the cables were galvanized to prevent corrosion, a naturally occurring phenomenon caused by the exposure of metal to the environment. Pl.'s Ex. B at 35, 40. Dobson, however, further opined that while the cables were treated to prevent corrosion, without similar treatment of the other components of the stand,

---

[5] Garfield has not opposed Wal-Mart's motion for summary judgment on the manufacturing defect claim. Garfield therefore will be held to waive this claim.

[6] Garfield has proffered Dobson as his trial expert. *See Haughton v. Hill Labs., Inc.*, 2007 WL 2484889, at *3 (D. Mass. Aug.30, 2007) ("[I]n a products liability case of any sophistication, a plaintiff's failure to support her claims of a design defect with expert testimony is almost always fatal.").

the stand would "have a much shorter life."  *Id.* at 40-41.  Dobson states this is so because coating the steel cable wires with zinc ensures that the coating will corrode before the steel.  *Id.* at 40.  But if only the cables are galvanized, "you've got a large area of steel, [and a] very small amount of galvanizing . . . [so] [t]he galvanizing is going to go away very quickly, and you're down to bare steel, and it starts to corrode."  *Id.*  Wal-Mart's contention that Dobson's theory is "wholly speculative," Def.'s Mem. at 14, is ultimately a question of fact to be resolved by the jury.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky, but admissible evidence.").

Garfield also relies on Dobson's opinion in offering an alternative feasible design for the tree stand cables.  Dobson states that the cables could have been made with stainless steel (rather than carbon steel), which is "more corrosion resistant," and would have had the effect of increasing the cables' lifespan "at minimal additional cost."  Pl.'s Ex. A at 2.  Dobson noted in this regard that, if the steel was bought at retail (as opposed to wholesale) price, the cost difference between stainless and carbon would amount to roughly no more than an additional $1.60 per tree stand.  Pl.'s Ex. B at 43.

7

Wal-Mart responds that Dobson's alternate design theory is speculative and therefore unreliable because he never tested it in practice. Def.'s Mem. at 16-17; Pl.'s Ex. B at 48. Wal-Mart relies on *Carlucci v. CNH Am. LLC*, 2012 WL 4094347 (D. Mass. Sept. 14, 2012), for the proposition that "expert speculation of untested alternative designs is insufficient to demonstrate the feasible alternative design requirement." Def.'s Mem. at 16. However, the court in *Carlucci* recognized that no "binding precedent . . . suggests [that] alternative design testing is mandated in Massachusetts design defect cases." 2012 WL 4094347, at *6. The court has already ruled on Dobson's qualifications as an expert and has held that any disagreement over the feasibility of Dobson's alternative design "[is] for the jury, and not the court." Order denying Motion in Limine, 6/23/15, Dkt. #38 at 5.

Wal-Mart next argues that Garfield has failed to meet his burden of showing causation. Wal-Mart claims that Garfield was the sole proximate cause of his injury because, had he been wearing a body safety harness tethered to the tree as instructed, his fall would have been avoided. Garfield conceded in his deposition that he was aware of the safety instructions and videos and understood the importance of wearing a harness when hunting from an elevated tree stand. Pl.'s Ex. C at 101, 107. He contends, however, that the collapse of the platform was the precipitating cause of the accident

and his injuries. Ultimately, causation, save in rare circumstances (of which this is not one), is a question of fact for the jury. *See Zezuski v. Jenny Mfg. Co.*, 363 Mass. 324, 328 (1973); *see also Santiago v. Sherwin Williams Co.*, 3 F.3d 546, 552 (1st Cir. 1993) ("Where there is no evidence from which the factfinder, without speculating, can find causation, however, the case is appropriately kept from the jury.").[7]

Wal-Mart finally contends that Garfield caused his own injury by failing to heed the warnings to inspect the cables before using the tree stand. In response, Garfield points to Dobson's report, in which he concluded that

---

[7] Wal-Mart also appears to rely on a theory of contributory negligence derived from Mass. Gen. Laws ch. 231, § 85, to rebut Garfield's breach of warranty claim. A negligence-based claim, however, differs from a tort-based claim for breach of warranty. The first focuses on the conduct of the designer or manufacturer; consequently compliance with pertinent industry standards is evidence of lack of negligence; breach of warranty, on the other hand, is found on strict liability principles and focuses on whether the product is defective and unreasonably dangerous and not on the conduct of the manufacturer. *Touch v. Master Unit Die Prods., Inc.*, 43 F.3d 754, 757 (1st Cir. 1995). *See also Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 15 (1st Cir. 2001) ("Actions under Massachusetts law for breach of the implied warranty of merchantability are the functional equivalent of strict liability in other jurisdictions."). Garfield would only be prevented from recovering here if, "after discovering the product's defect and being made aware of its danger, he nevertheless proceeded unreasonably to make use of the product and was injured by it." *Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 357 (1983). Wal-Mart on the present state of the evidence would be entitled to a jury instruction on this issue at trial. It is not, however, fodder for a summary judgment motion in light of Garfield's testimony that he did not know that the cables were corroded at the time of the accident. Pl.'s Ex. C at 111.

the "hazard created by corroding cables [was] not open and obvious," and that an average user would not have noticed the corroded strands even on a close inspection. Pl.'s Ex. A at 3. Wal-Mart also argues that Garfield failed to heed the warning to replace the cables every three years, and to wear a harness when leaving the ground. Def.'s Mem. at 19. These are fair issues for Wal-Mart to raise at trial, but the question of whether and to what extent these alleged misuses contributed to Garfield's injuries is to be resolved by the jury.

### *Failure to Warn*

Garfield also contends that Wal-Mart was negligent for a failure to warn. "A manufacturer has a duty to warn expected users of its product of latent dangers in its normal and intended use." *Carey v. Lynn Ladder & Scaffolding Co.*, Inc., 427 Mass. 1003, 1003 (1998). *See also Mitchell v. Sky Climber, Inc.*, 396 Mass. 629, 631 (1986); *H.P. Hood & Sons, Inc. v. Ford Motor Co.*, 370 Mass. 69, 75 (1976); *Welch v. Keene Corp.*, 31 Mass. App. Ct. 157, 163 (1991). A product may also be deemed defective by reason of an imperfect warning if an omitted or inadequate notice or instruction would have reduced or avoided the foreseeable risk of harm. *See* Restatement (Third) of Torts: Products Liability § 2(c) (1998). There is no duty to warn a plaintiff who is fully aware of the risks posed by the product. *Morrell v.*

*Precise Eng'g, Inc.*, 36 Mass. App. Ct. 935, 936 (1994); *see also Garcia v. Kusan, Inc.*, 39 Mass. App. Ct. 322, 329 n. 7 (1995) ("Where danger is obvious, [a] manufacturer need not warn.").

In this case, Wal-Mart has offered undisputed evidence of the explicit tree stand warnings, including instructions underscoring the need for a user to wear a harness when elevating above ground and to replace the tree stand's cables every three years. Def.'s Exs. 3-5. In his deposition, Garfield admitted that he understood these warnings and instructions, and yet he failed to wear a harness when installing the tree stand or to replace the aging cables. Pl.'s Ex. C at 107. In light of these undisputed facts, it is evident that a more fulsome warning would have done nothing to avert Garfield's injury. *See Cottam v. CVS Pharm.*, 436 Mass. 316, 327 (2002) (duty on user to "read and heed"). When an existing warning "clearly call[s] attention to the dangers to be avoided" and "there [is] no evidence that an additional or different warning would have so alerted the plaintiff [so] that the accident would not have occurred," no reasonable jury could find for a plaintiff on a failure-to-warn theory. *Bell v. Wysong & Miles Co.*, 26 Mass. App. Ct. 1011, 1013 (1988) (reversing the trial court and dismissing a failure to warn claim on this basis); *see Plante v. Hobart Corp.*, 771 F.2d 617, 621 (1st Cir. 1985) (affirming a directed verdict for a manufacturer where the court could "not

see how one can reasonably say that defendants were negligent in failing to furnish even more warnings about the dangers" at issue); *see also Bavuso v. Caterpillar Indus., Inc.*, 408 Mass. 694, 701-702 (1990) (reversing a jury verdict and the district court's entry of judgment in favor of the plaintiff because "a warning beyond the warnings given could not have made the danger any more obvious"). While the adequacy of warnings is "almost always an issue to be resolved by a jury," *MacDonald v. Ortho Pharm. Corp.*, 394 Mass. 131, 140 (1985), in the undisputed circumstances of this case, no reasonable juror could find for Garfield on a theory of a failure to warn.

### ***Breach of Implied Warranty of Fitness***

The warranty of fitness for a particular purpose is similar to the warranty of merchantability, but applies only when the buyer envisages a specific use for the product "which is peculiar to the nature of his business." Mass Gen. Laws ch. 106, § 2-315 cmt. 2; *see Fernandes v. Union Bookbinding Co.*, 400 Mass. 27, 35-36 (1987). Garfield's assertion that Wal-Mart breached its implied warranty of fitness for a particular purpose fails as a matter of law. *See Laspesa v. Arrow Int'l, Inc.*, 2009 WL 5217030, at *4 (D. Mass. Dec. 23, 2009) ("When the buyer plans to use the product for its ordinary purpose, the only implied warranty is the warranty of merchantability"). Since it is undisputed that a tree stand is used to hunt

and Garfield used the tree stand for the very purpose for which it was intended, he cannot claim a breach of the implied warranty of fitness. *See Hannon v. Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 821 (1982) (no breach under § 2-315 where a buyer used the swimming pool for no purpose other than to swim).

## ORDER

For the foregoing reasons, Wal-Mart's motion for summary judgment on Count IV (breach of warranty) is <u>DENIED</u>. Wal-Mart's motion for summary judgment on Counts V and VI (failure to warn and fitness for particular purpose) is <u>ALLOWED</u>. The Clerk may now set the case for trial.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE